

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAMADA FRANCHISE SYSTEMS, INC., )
                                           )
       Plaintiff, )
                                           )
       v. )        Case No. 02 C 1941
                                           )
ROYAL VALE HOSPITALITY OF )        Hon. Mark Filip
CINCINNATI, INC., an Illinois corporation, )
KAMLESH SHETH, an individual, and )
YOGESH SHAH, an individual, )
                                         )
       Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ramada Franchise Systems, Inc. ("Plaintiff" or "Ramada") filed suit against defendants Royal Vale Hospitality of Cincinnati, Inc. ("Royal Vale"), Kamlesh Sheth ("Sheth"), and Yogesh Shah ("Shah"), (collectively, "Defendants"), alleging, *inter alia*, that Defendants have infringed its trade and service marks and have breached a licensing agreement. Counts I-III of Ramada's Complaint seek damages for Defendants' alleged unauthorized and willful use of Ramada's marks in violation of sections 32, 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), 1125(c). Count IV seeks an accounting. Count V seeks liquidated damages resulting from the termination of a licensing agreement. Count VI seeks actual damages, in the event Defendants are not able to pay liquidated damages. Count VII seeks certain fees that are alleged to be due under the licensing agreement. Count VIII seeks recovery on an unjust enrichment theory. Count IX seeks damages for the breach of a guaranty.

Before the Court is Plaintiff's motion for summary judgment on counts I-III, V-VII, and

IX of Ramada's Complaint[1] (D.E. 29), as well as on Defendants' counterclaim.[2] Also before the Court is Plaintiff's Motion to Strike Portions of Defendants' Summary Judgment Submission (D.E. 55). For the following reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. Plaintiff's motion to strike is granted in part and denied in part as moot.

I.    The Defendants' Summary Judgment Filings

The Court begins by noting that Defendants have provided little in terms of legal authority or even argument. Ramada argues that it is entitled to summary judgment as a matter of law on seven counts of its complaint and on Defendants' counterclaim. Ramada seeks $546,204.52 in damages, as well as attorneys' fees and prejudgment interest. (Pl.'s Mot. for

---

[1]    Ramada indicates that it "is not seeking summary judgment on Counts IV and VIII because those claims are alternative claims, which will become moot should this Court grant [Ramada] summary judgment on [Ramada's] remaining claims." (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 1 n.1.)

[2]    Defendants' counterclaim and proposed amended counterclaims have been reoccurring issues in this litigation. *See Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No 02-1941, 2004 WL 2966948, at *1 (N.D. Ill. Nov. 24, 2004); *Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02-1941, 2004 WL 1179401, at *1 (N.D. Ill. May 26, 2004). Defendants suggest in their Response to Plaintiff's Motion to Strike (D.E. 57) that there are nine counterclaims at issue in this case. (D.E. 57 at 3.) This contention is not supported by the record and is inconsistent with Defendants' prior representation to the Court. (*See* Parties' Joint Status Report (D.E. 22) at 2 ("Defendants have asserted a *counterclaim* that [Ramada] breached the License Agreement regarding the inclusion of Defendants' facility in a national reservation system.") (emphasis added).) Although Defendants' counterclaim has nine paragraphs, each of those paragraphs relates to the licensing agreement and the national reservation system. Defendants also suggest that there is a counterclaim related to Ramada's alleged failure to train (Defs.' Local Rule 56.1(b)(2) Mem. of Law (D.E. 51) at 3) as well as a counterclaim for alleged breach of marketing support (D.E. 57 at 2). These purported counterclaims are not at issue in this litigation—such allegations were never pled as counterclaims in Defendants' Answer. *Cf. Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). The former was asserted as an affirmative defense and the latter was not asserted at all.

Summ. J. (D.E. 29) at 2.) In response, Defendants, who are represented, have filed an approximately three-page brief that basically recites, line by line, the 13 paragraph affidavit of Defendant Kamlesh Sheth.[3] The affidavit, however, is not tailored to address—and does not address—any of Ramada's arguments, at least without what would be substantial extrapolation by the Court. (The affidavit is also the subject of a motion to strike, as discussed below.) In terms of legal authority, Defendants cite only two cases, both for the generic proposition that a non-movant can survive summary judgment on the basis of affidavit testimony. (*See* Defs.' Local Rule 56.1(b)(2) Mem. of Law (D.E. 51) at 1 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), and *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)).)[4]

To be entirely fair to Defendants, the Court notes that, in the appropriate circumstances, a non-movant does not have to oppose a motion for summary judgment to survive such a motion. *See, e.g., LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995); 1963 Advisory Committee Notes to Fed. R. Civ. P. 56(e) ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."); *accord, e.g., Reed v. Bennett*, 312 F.3d

---

[3]      Defendants' three-page summary judgment response does not directly address any argument advanced by Plaintiff, nor does it cite any case law beyond two cases that stand for one of the most basic of summary judgment propositions. The response also does not attempt to explain the relevance of any potential affirmative defenses of the Defendants.

[4]      Defendants' citation of *Lujan* is puzzling, in that it emphasizes, as discussed further below, the flaws in defendant Sheth's affidavit. The Supreme Court instructed that a court need not assume that "general averments [in an affidavit] embrace the 'specific facts' needed to sustain [a] complaint," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), and that a court cannot "'presume' missing facts [in an affidavit]" simply because without those facts the affidavit would essentially be rendered meaningless for purposes of opposing a summary judgment motion, *id.* at 889.

3

1190, 1194 (10th Cir. 2002). Rather, the movant has the initial burden to demonstrate that there is no disputed issue of material fact. *See Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996). If this burden is met, "the sole question is whether the moving party is entitled to judgment as a matter of law." *Id.* If the movant's initial burden is not met, the motion must be denied. On the other hand, if the movant satisfies this burden, "the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). And, as discussed below, the factual issues identified by the nonmovant "must be 'material'" in order to defeat a motion for summary judgment. *Id.*

That stated, the Court notes that a non-movant (at least a represented one, as is the case here) that employs what can only be characterized as a *de minimis* approach to summary judgment practice does so at its own peril. Irrespective of whether a non-movant does or does not file a summary judgment response, a district court is not obligated to construct arguments on behalf that party, particularly where, as here, the party is represented. *See, e.g., Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993) (citing *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992) (collecting cases)). The Court therefore proceeds to analyze whether Ramada's arguments, and the record evidence cited in support of those arguments, entitle Ramada to summary judgment as a matter of law.

II.     Motion to Strike

Ramada has filed a Motion to Strike Portions of the Defendants' Summary Judgment Submission (D.E. 55). Ramada argues that Defendants allege facts that (1) pertain to claims or defenses not properly before the Court; (2) are unsupported by the record; (3) are not admissible in evidence; (4) are not based on personal knowledge; and (5) are contradicted by prior sworn

4

testimony. Ramada argues that these facts should be stricken. (D.E. 55 at 3.) In response, Defendants contend that Ramada's motion should be denied because Ramada's motion "only raises disputes with facts sworn to by . . . Shah and Sheth which, for purposes of a [summary judgment] motion, are taken as true and negate the testimony . . . submitted by Plaintiff . . . ." (D.E. 57 at 1.) For the sake of efficiency, the Court addresses arguments directed at particular statements of fact as (and if) the statement becomes material to the resolution of an issue that is presented by Ramada's summary judgment motion.

## Background

III.    The Parties

Plaintiff Ramada is one of the largest guest lodging facility franchise systems in the United States. (D.E. 30 (hereafter "Pl.'s St.") ¶ 8.) Through its franchise system, Ramada markets, promotes, and provides services to its guest lodging franchisees (*id.* ¶ 12), including a centralized reservation system and training services (*id.* ¶ 9). Defendant Royal Vale is a corporate entity that, as discussed below, entered into a licensing agreement with Ramada. (*Id.* ¶ 2.) Defendants Sheth and Shah are principals of Defendant Royal Vale. (*Id.* ¶¶ 3,4.)

IV.    The Licensing Agreement

This matter involves a licensing agreement ("Agreement") for the operation of a Ramada "guest lodging facility" ("Facility") in Cincinnati, Ohio. (*Id.* ¶ 5.) Ramada and Defendant Royal Vale entered into the Agreement on May 25, 2000. (*Id.* ¶ 16.) It is undisputed that the Agreement is a valid and binding contract (*id.*) and that the Agreement provides that it is governed by New Jersey law (*id.* ¶ 36). As explained below, Ramada contends that Defendant Royal Vale breached the Agreement due to certain fee-related and quality assurance defaults.

5

Ramada further contends that after it terminated the Agreement due to these defaults, Royal Vale continued to use Ramada's trade and service marks. According to Ramada, such use constituted infringement under the Lanham Act. In Defendants' view, Ramada breached the Agreement by suspending Royal Vale from Ramada's centralized reservation system.

The relevant terms of the Agreement are undisputed. Under the Agreement, Royal Vale was obligated to operate the Facility for a 15-year term ending on May 24, 2015. (*Id.* ¶ 17.) During this time, Ramada permitted Royal Vale to use the Ramada trademarks in association with Royal Vale's operation of the Facility as part of the Ramada franchise system. (*Id.*) Among other things, Royal Vale agreed to operate the Facility in compliance with Ramada's system and system standards. (*Id.* ¶ 18.) Royal Vale also agreed to make renovations to the Facility to bring it into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in and/or attached to the Agreement. (*Id.*) For example, in the Punchlist (which was attached to and incorporated into the Agreement), it stated that Royal Vale was required to have a full menu service restaurant fully operational at the Facility prior to opening; the Punchlist further noted that the restaurant at the Facility was "currently closed and [wa]s required to reopen immediately." (*Id.* ¶ 19 (quoting page eight of the Punchlist).)

A.     Quality Assurance

With respect to the "system standards," section 3.4 of the Agreement, among other things, required that Royal Vale operate the Facility in compliance with Ramada's quality assurance requirements. (*Id.* ¶ 20.) Ramada's quality assurance requirements obligated Royal Vale to achieve a "quality inspection score" of at least 400 points (or the equivalent of such a score) within 90 days after the effective date of the Agreement and 425 points (or the equivalent of such

6

a score) within nine months after the effective date of the Agreement. (*Id.* ¶ 18.) Under section 4.8 of the Agreement, Ramada had the unlimited right to conduct "unannounced quality assurance inspections" of the Facility to determine compliance with Ramada's quality assurance programs. (*Id.* ¶ 21.) Under section 3.8 of the Agreement, Royal Vale agreed to permit Ramada representatives to perform these quality assurance inspections of the Facility at any time with or without notice. (*Id.* ¶ 22.) As set forth below, Ramada argues that Royal Vale breached the Agreement by, among other things, failing to meet these minimal quality assurance requirements.

B.    Recurring Fees

Under section 7 and Schedule C of the Agreement, Royal Vale was required to make certain periodic payments to Ramada for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees"). (*Id.* ¶ 25.) Under section 3.9 of the Agreement, Royal Vale was required to prepare and submit monthly reports to Ramada to disclose, among other things, the amount of gross room revenue earned by Royal Vale at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to Ramada. (*Id.* ¶ 23.) Royal Vale also agreed to maintain accurate financial information at the Facility, including books, records, and accounts relating to the gross room revenue of the Facility. (*Id.* ¶ 24.) Under sections 3.8 and 4.8 of the Agreement, Royal Vale agreed to allow Ramada to examine, audit, and make copies of the entries in these books, records, and accounts. (*Id.*)

Section 7.3 of the Agreement also provided for interest on all unpaid Reoccurring Fees. (*Id.* ¶ 26.) Specifically, under the Agreement, "[i]nterest is payable [to Ramada] when [Royal Vale] receive[s] [Ramada's] invoice on any past due amount payable to [Ramada] under [the]

7

Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.*)

C.     Reservation System

Royal Vale also agreed to become part of Ramada's "computerized Reservation System." (*Id.* ¶ 27.)[5] This system offers "booking and reservations to the public." (*Id.*) Section 11.4 of the Agreement gave Ramada the right, among other things, to "suspend the Facility from the Reservation System for any default or failure to pay or perform under [the] . . . Agreement, discontinue Reservation System referrals to the Facility for the duration of such suspension, and [to] divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment[,] or default." (*Id.* ¶ 28.)[6] This section further provides that "Reservation service will be restored after [Royal Vale has] fully cured any and all defaults and failures to pay and perform." (*Id.*)

D.     Breach of the Agreement

Ramada contends, without meaningful dispute from Defendants, that Royal Vale failed to meet its financial obligations under the Agreement. Royal Vale failed to file monthly reports or to remit payment of the Recurring Fees, in an amount estimated to be $40,894.53, owed to

---

[5]     Defendants disagree with paragraph 27 of Ramada's statement of facts in that they "disagree that [Ramada] put or kept Royal Vale on the Rexervation [sic] system." (D.E. 51 (hereafter "Defs.' Resp.") ¶ 27.) The statement, however, does not address whether Royal Vale was or was not "put or kept" on the reservation system. The Court reviewed the record evidence cited in support of this statement and found that the statement is properly supported. Paragraph 27 is, therefore, deemed admitted.

[6]     Defendants repeat their response to paragraph 27 in their response to paragraph 28. The Court has reviewed the record evidence that Ramada cites in support of paragraph 28 and finds that it is properly supported. Paragraph 28 is, therefore, deemed admitted.

8

Ramada for the months of February, March, April, May and June 2001. (Pl.'s St. ¶ 60.)[7]

Defendants concede in their summary judgment response that Royal Vale was "unable to earn the money necessary to pay the license and other fees," citing one of Defendants' interrogatory responses that states payments "weren't made from February 2001." (D.E. 51 at 3 (citing Defendants' Interrogatory Resp. No . 22).) The Court therefore finds it undisputed that Royal Vale did not meet its financial obligations under the Agreement.

Ramada also contends that Royal Vale failed three quality assurance inspections. The parties agree that Royal Vale failed its second quality assurance inspection of the Facility on February 13, 2001, with a failing score of 150-F in the Inn segment of the inspection, and a failing score of 283-F in the Food and Beverage Section. (Pl.'s St. ¶ 55.) With respect to the alleged first and third failures, Defendants, as discussed below, do not dispute or otherwise argue that such failures did not occur.

In this regard, with respect to the first failure, it is undisputed that Ramada conducted a quality assurance inspection of the Facility on October 17, 2000. (*Id.* ¶ 50.) Paragraph 51 of Ramada's statement of facts contends that by letter dated November 3, 2000, Ramada advised Royal Vale, among other things, that the Facility had failed this quality assurance inspection. (*Id.* ¶ 51.) In response to this statement, Defendants do not contend that the Facility did not fail this inspection. Rather, Defendants "disagree that Royal Vale was 'advised' per the Agreement," citing paragraph eight of Sheth's affidavit. Paragraph eight of the Sheth affidavit states that

---

[7]     Defendants take issue with whether Royal Vale received "notice." (Defs.' Resp. ¶ 60.) This attempt to dispute notice is baseless. In his deposition, Sheth expressly acknowledged that he received notice of the owed fees as well as other quality assurance violations. *See* Sheth Dep. at 61-62. *See also* notes 8-10, *infra.*

"Ramada's letter dated November 3, 2000[,] is not properly addressed to me." (Sheth Aff. ¶ 8.) Thus, whatever Defendants might purport to dispute—they do not advance any meaningful "notice" argument in their 3-page opposition brief—they do not dispute the fact that Royal Vale failed the October 17, 2000, quality assurance inspection.

Regarding the third failure, Ramada states in paragraph 59 of its statement of facts that on June 18, 2001, Ramada attempted to conduct another quality assurance inspection of the Facility. (Pl.'s St. ¶ 59.) According to Ramada, "Royal Vale refused to allow the inspectors access to the Facility." (*Id.*) As a consequence, the "[Ramada] inspector gave the Facility a failing grade on the inspection, resulting in Royal Vale's third consecutive failed [quality assurance] inspection of the Facility." (*Id.*) Defendants disagree with this statement, arguing that "it relies upon inadmissible hearsay to prove the truth of the matter asserted." (Defs.' Resp. ¶ 59.)

This dispute is not material to the breach issue—given the other undisputed breaches discussed above. Nonetheless, it is unclear why Defendants believe paragraph 59 relies on inadmissible hearsay. Paragraph 59 is supported by, among other things, the affidavit of James Darby ("Darby"), the Vice President of Franchise Administration for Ramada. (Darby Aff. ¶ 1.) Darby states in his affidavit that he made his "affidavit based on [his] personal knowledge, the records of [Ramada][,] and information available through employees of [Ramada]." (*Id.*) He also avers that he is "prepared to testify competently to them [*i.e.*, the facts sworn to in his affidavit] if called as a witness in this matter." (*Id.*) Moreover, as discussed below, Defendants have conceded "that the condition of the motel was such that it wouldn't pass inspection by Ramada." (Defs.' Local Rule 56.1(b)(2) Mem. of Law (D.E. 51) at 2.) In light of all the foregoing, the Court concludes that it is undisputed that Royal Vale failed three quality assurance

10

inspections—although, again, given the other undisputed breaches, this third-breach question does not appear to be a material issue.

      E.     Termination of the Agreement

Under sections 11.1 and 11.2 of the Agreement, Ramada could terminate the Agreement, with notice to Royal Vale, for various reasons. (Pl.'s St. ¶ 29.) It is undisputed that these reasons included Royal Vale's (a) failure to pay any amount due to Ramada under the Agreement; (b) failure to remedy any other default of its obligations or warranties under the Agreement within 30 days after receipt of written notice from Ramada specifying one or more defaults under the Agreement; and (c) receipt of two or more notices of default under the Agreement in any one year period, whether or not the defaults were cured. (*Id.*)

As previously explained, it is undisputed that Royal Vale did not file monthly reports or remit payment of the Recurring Fees owed to Ramada for the months of February, March, April, May and June 2001. (*Id.* ¶ 60.)

In addition, Defendant Sheth received three notices that Royal Vale was in default. In this regard, Sheth received, by letter dated November 3, 2000, notice that the Facility had failed a quality assurance inspection and that Royal Vale was therefore not in compliance with its obligations under the Agreement. (*Id.* ¶ 51.)[8] The November 2000 letter stated that the Facility

---

[8]     Defendants object to paragraph 51 of Ramada's statement of facts, stating that they "disagree that Royal Vale was 'advised' per the Agreement," and citing paragraph eight of Sheth's affidavit. (Defs.' Resp. ¶ 51.) Paragraph eight of Sheth's affidavit states that "Ramada's letter dated November 3, 2000[,] is not properly addressed to me." (Sheth Aff. ¶ 8.) This contention is baseless. As discussed in Paragraph 54 of Ramada's statement of facts, Sheth in his deposition expressly confirmed that he received this letter "on or about November 8, 2000." (Pl.'s St. ¶ 54 (citing Sheth Dep. at 56) *see also* Sheth Dep. at 61 ("Q: And you understood that this letter was notifying you that the facility which had been in default since at least November 3rd, 2000[,] from the last letter was still in default due to quality assurance problems? A:

11

would be reinspected after the expiration of a 30-day cure period. It also stated that if the Facility

failed the reinspection, that Ramada may terminate the Agreement. Sheth also received, by

letter dated February 28, 2001, notice that Royal Vale was in continuing default under the

Agreement and that the Agreement was subject to termination because Royal Vale had failed a

second quality assurance inspection. (*Id.* ¶ 56.) Sheth received that letter on or about March 2,

2001. (*Id.* ¶¶ 56, 58.)[9] Sheth also received, by letter dated July 19, 2001, another notice that

Royal Vale was in continuing default for failing to meet its financial and quality assurance

obligations. (*Id.* ¶ 60.)[10] Sheth received this letter on or about July 24, 2001. (*Id.* ¶ 62.) Thus,

the record evidence demonstrates that the Agreement was subject to termination by Ramada

because of (a) Royal Vale's failure to pay fees due under the Agreement; (b) Royal Vale's failure

to remedy certain defaults under the Agreement within 30 days, and (c) Royal Vale's receipt of at

least two notices of default in a one year period.

By letter dated September 20, 2001, Ramada terminated the Agreement, effective

immediately, and advised Royal Vale that it must fulfill the post-termination obligations set forth

---

Yes.").) Any attempt by Sheth to contradict his express prior admission is his deposition is
impermissible. *See, e.g., Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724
(7th Cir. 1998) (collecting cases).

[9]     Defendants object to this statement of fact, stating that they "disagree that proper notice
was given to Royal Vale." (Defs.' Resp. ¶¶ 56-57.) The Court reviewed the record and has
determined that, although the letter was addressed to Kamlesh Patel, defendant Sheth admitted
receiving the letter on or about March 2, 2001, in his deposition. (Pl.'s St. ¶ 58 (citing Sheth
Dep. at 60-61).)

[10]    Defendants object to this statement, arguing that they "disagree that proper notice was
given to Royal Vale." (Defs.' Resp. ¶ 60.) The Court reviewed the record and has determined
that, although the letter was addressed to Kamlesh Patel, defendant Sheth admitted receiving the
letter on or about July 24, 2001, in his deposition. (Pl.'s St. ¶ 62 (citing Sheth Dep. at 61-62).)

in the Agreement, including the payment to Ramada of $240,000 as liquidated damages for premature termination of the Agreement, and all outstanding Recurring Fees through the date of termination, in the amount of $49,421.62. (*Id.* ¶ 63.) This letter notified Royal Vale that "it must completely deidentify the [Facility] from its appearance as a Ramada guest lodging facility within 10 days of [its] receipt of the letter." (*Id.* ¶ 64.) It also notified Royal Vale that it "must discontinue further use of the Ramada tradename and service marks on or about the [Facility], including any form of advertising to promote the [Facility] as a Ramada System Unit." (*Id.*)

      F.     Liquidated Damages

The parties expressly agreed in the Agreement that Royal Vale would pay Ramada liquidated damages for a premature termination of the Agreement. (*Id.* ¶ 31.) In Section 12.1 of the Agreement, Royal Vale agreed, in the event of premature termination of the Agreement under section 11.2, to pay Ramada "within 30 days following the date of termination, as Liquidated Damages," an amount to be calculated in accordance with a formula specified in the Agreement. (*Id.*) The formula for calculating liquidated damages set forth in section 12.1 of the Agreement multiplies the Facility's number of rooms by $2,000. (*Id.* ¶ 33.) The parties agree that the liquidated damages were set under section 12 "because actual damages will be difficult or impossible to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty." (*Id.* ¶ 32; *see also id.* ¶¶ 76-78 (parties agreeing that the liquidated damages provision was not a penalty, was a "good faith pre-estimate of the monetary loss that . . . [Ramada] would sustain" if there was a breach, and that actual damages would be difficult, if not impossible, to calculate precisely).)

13

V.   The Guaranty

Defendants Sheth and Shah provided Ramada with the Guaranty (*Id.* ¶ 38), under which

Sheth and Shah jointly and severally guaranteed the performance of Royal Vale's obligations

under the Agreement. (*Id.* ¶ 39.) In this regard, both Sheth and Shah agreed that upon Royal

Vale's default under the Agreement, they would "immediately make each payment and perform

or cause [Royal Vale] to perform, each unpaid or unperformed obligation of [Royal Vale] under

the . . . Agreement." (*Id.*) In addition, Sheth and Shah agreed that the prevailing party should

recover its costs, including reasonable attorneys' fees that are incurred to enforce the rights or

remedies granted under the Agreement. (*Id.* ¶ 40.)

VI.   The Ramada Marks

Ramada has the exclusive rights to sublicense the use of various trade names and service

marks (the "Ramada Marks"), including the name, design, and logo for "Ramada." (*Id.* ¶ 9.)

The parties agree that the Ramada Marks are among the most famous marks in the United States.

(*Id.* ¶ 15.) As noted above, as part of the Agreement, Ramada permitted Royal Vale to use the

Ramada Marks in association with Royal Vale's operation of the Facility as part of the Ramada

franchise system. (*Id.* ¶ 17.)

The termination of the Agreement required that Royal Vale immediately discontinue

further use of the Ramada Marks, and to de-identify the Facility by removing all items bearing

the Ramada Marks. (*Id.* ¶ 65.) Specifically, section 13 of the Agreement specified Royal Vale's

further obligations in the event of termination of the Agreement, including the requirement that it

cease immediately any use of the Ramada Marks. (*Id.* ¶ 34.) In this regard, the Agreement

provided that upon termination, Royal Vale would "immediately stop using the System to operate

14

and identify the Facility. [Royal Vale] will remove all signage and other items bearing any Marks and follow the steps detailed in the System Standards Manual for changing the identification of the Facility. [Royal Vale] will promptly paint over or remove the Facility's distinctive System trade dress, color schemes and architectural features." (*Id.*)

Royal Vale did not stop using the Ramada Marks after the Agreement was terminated. A February 21, 2002, inspection revealed that Ramada was, at a minimum, still using Ramada signage and "phone face plates." (*Id.* ¶ 68.)[11] On April 5, 2002, the Court entered an Agreed Order for a Preliminary Injunction, requiring the Defendants to remove the Ramada signage by noon April 12, 2002, and immediately enjoining the Defendants from any further use of Ramada Marks at the Facility. (*Id.* ¶ 69.) As of August 29, 2002, the Facility was not completely de-identified in that the Facility displayed telephone face plates bearing the Ramada name within its

---

[11]     Paragraph 68 of Ramada's statement of facts states that "a February 21, 2002, inspection of the Facility revealed that, as of that date, Royal Vale was (a) displaying the Ramada name and Ramada Marks on signage on the exterior of the Facility, including on a large sign in front of the Facility; (b) displaying the Ramada name and Ramada Marks on billboards used to advertise the Facility; and (c) identifying the Facility as a Ramada guest lodging facility on the telephone." (Pl.'s St. ¶ 68.) Defendants object to this statement, citing paragraph 11 of Sheth's affidavit and Defendants' response to interrogatory number 15. (Defs.' Resp. ¶ 68.) Paragraph 11 of Sheth's affidavit admits, however, that Defendants "were unable to get someone to cover over the Ramada signs at the motel for several months after September 2001" and that the "phone plates" cited in the Darby Affidavit "were inadvertently not removed." (Sheth Aff. ¶ 11.) Defendants' response to Ramada's interrogatory number 15 states that "[i]n October 2001, [Defendants] removed all Ramada named items except the little soap bars which [Defendants] were finally able to replace in April 2002." (Defs.' Resp. to Pl.'s Interrogatory No. 15.) This response also indicates that Defendants "got a company to make a cover for the Ramada sign in May 2002." (*Id.*) After reviewing the record evidence cited by the parties, the Court takes as undisputed that, on February 21, 2002, Defendants were engaging in trademark infringement that, at a minimum, involved unauthorized use of Ramada signs, phone "face plates," and soap toiletries.

15

rooms. (*Id.* ¶ 70.)[12]

VII.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In

ruling on a summary judgment motion, it is not a court's "function to scour the record in search

of evidence to defeat . . . summary judgment; [a court relies] on the nonmoving party to identify

with reasonable particularity the evidence upon which [the nonmovant] relies." *Bombard v. Fort*

*Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also, e.g., Richards v. Combined*

*Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir.1995).

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord, e.g., Richards*, 55

F.3d at 251. In such a situation there can be "no genuine issue as to any material fact since a

complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

---

[12]    Defendants object to paragraph 70 of Ramada's statement of facts. As noted above,
however, Defendants admit that the Ramada items referenced in paragraph 70 "were
inadvertently not removed and were taken away promptly when [Defendants] were told about
them." (Sheth Aff. ¶ 11.)

VIII. Summary Judgment on Defendants' Counterclaim Is Appropriate

The Court begins its analysis by addressing Defendants' counterclaim. In their counterclaim, Defendants allege, in a variety of different ways, that Ramada breached the Agreement by "cutting-off" Defendants from participation in the national reservation system.[13] Ramada argues that it is entitled to summary judgment "because Defendants have failed to establish either that they substantially performed their obligations under the Licensing Agreement or the existence of any damages caused by the allegedly wrongful lack of access to the Reservation System." (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 13.) Defendants do not address these arguments in their response.

The parties agree that the Agreement provides that New Jersey law shall govern.[14] (Pl.'s St. ¶ 36.) Under New Jersey law, a plaintiff must prove four elements to prevail on a breach of contract claim: (1) the existence of a valid and binding contractual relationship with the defendant; (2) that the defendant breached the contract; (3) that the plaintiff complied with and performed its obligations under the contract; and (4) that the plaintiff sustained damages as a result of the breach. *See, e.g., Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 448 (D. N.J. 1999).

A.    Defendants Have Not Produced Evidence of Damages

---

[13]    As discussed in note two, *supra*, the only claim presented by Defendants counterclaim is that Ramada breached the agreement regarding Royal Vale's inclusion in the national reservation system.

[14]    Ramada contends that "[a]lthough the . . . Agreement provides that New Jersey law shall govern the result here would be the same whether New Jersey or Illinois law applies." (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 7 n.5 (internal citation omitted).) The Court need not confirm this contention, given that it is undisputed that the Agreement provides that it is governed by New Jersey law.

As Ramada points out, an essential element of Defendants' breach of contract contention under New Jersey law is that Royal Vale prove that it sustained damages because of the alleged breach of the Agreement by failing to include Royal Vale in the national reservation system. *See, e.g., Nat'l Util. Serv.*, 45 F. Supp. 2d at 448. Ramada argues that "Defendants cannot establish the existence of damages caused as a result of the allegedly wrongful suspension of access to the reservation system." (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 14.) In their summary judgment response, Defendants do not even argue—let alone point to any record evidence—that they were damaged by Ramada's allegedly cutting Defendants off from the national reservation system in purported breach of the Agreement. (The Court assumes for purposes of the instant analysis that Defendants could establish the other elements of this claim under New Jersey law and that the Agreement does prohibit such suspension.[15])

In support of its argument on this point, Ramada cites paragraph 46 of its statement of material facts. This paragraph asserts that "Defendants are unable to identify any lost business or other damages as a result of the Reservation System being closed." (Pl.'s St. ¶ 46.) Paragraph 46 is supported by a portion of defendant Sheth's deposition where Sheth testifies that he could only identify one individual who tried to make a reservation during the time the reservation system was purportedly closed. In this regard, Sheth testified that an unidentified customer informed Sheth that "corporate" had indicated to the individual that a room was not available. Sheth also testified that the individual nonetheless ended up making a reservation and staying at the Facility after speaking with someone at the front desk. (D.E. 36, Ex. 1 at 75-77.) Defendants "disagree"

---

[15]     As discussed below, Defendants do not identify the provision or provisions such alleged action is supposed to have breached.

18

with Paragraph 46 (without citing any record evidence in support) and state that "Sheth's statement only means that due to Shah's disability, Sheth could not analyze the financial records to prove damages." (Defs.' Resp. ¶ 46.) Defendants appear to repeat this reasoning in their response to Ramada's motion to strike by arguing that "Sheth himself doesn't know how to figure damages but this does not mean that there aren't others whom Royal Vale could call to identify damages, excluding Shah, either as its witnesses or even Ramada types as adverse witnesses." (Defs.' Resp. to Pl.'s Mot. to Strike (D.E. 57) at 3.)

Even if Sheth could not identify evidence of damages at his deposition, now is the time for the Defendants to do so. The Seventh Circuit has repeatedly instructed that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citing *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). In response to Ramada's summary judgment motion, Defendants have not "put up" any evidence regarding the essential element of damages. Summary judgment is, therefore, warranted on Defendants breach-of-contract counterclaim. *See Celotex*, 477 U.S. at 322 (teaching that summary judgment is warranted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). *Accord A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 1001 (7th Cir. 1992) (holding that summary judgment was appropriate where a plaintiff failed to produce any evidence of the essential element of damages in breach of contract suit) (applying Indiana law).

      B.    Defendants Have Not Performed Their Obligations Under the Agreement

Additionally, and independently, Defendants cannot demonstrate a second element of their breach of contract claim: that Royal Vale performed its obligations under the Agreement. In this regard, and as discussed below, there is no dispute that Royal Vale did not meet its financial and quality assurance obligations under the Agreement. For this independent reason, Ramada is entitled to summary judgment on Defendants' breach of contract counterclaim.

IX.     Summary Judgment Is Appropriate on Count V

Ramada argues that it is entitled to summary judgment on its claim (Count V) that defendant Royal Vale breached the Agreement. (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 7.) Defendants do not respond to this argument. The Court proceeds to analyze Plaintiff's contention without the benefit of Defendants' input on this issue.

In its summary judgment motion, Ramada argues, among other things, that Royal Vale breached the Agreement "by failing to pay amounts due under the . . . Agreement and by failing to operate the Facility in accordance with [Ramada's] System Standards pursuant to the . . . Agreement." (*Id.*) Defendants do not contest that Royal Vale did not "pay the license and other fees." (Defs.' Local Rule 56.1(b)(2) Mem. of Law (D.E. 51) at 3.) Defendants also do not meaningfully dispute that the Facility failed various inspections. (*See generally id.* at 2 (discussing that the motel "wouldn't pass inspection by Ramada").) It is also undisputed that Ramada substantially performed its obligations under the Agreement by providing Royal Vale with a license to use the Ramada Marks in association with the operation of the Facility as part of the Ramada Franchise System. (Pl.'s St. ¶ 37.) Given this express concession by Defendants, and given that Defendants do not contend that Ramada's substantial performance is not sufficient under the facts of this case to ground a successful contract claim or argue in any focused or

20

meaningful fashion that Ramada committed a material breach of its own, the Court finds that Defendants have waived any argument that Ramada has not sufficiently performed its obligations under the Agreement.

In an abundance of caution, the Court nonetheless analyzes Defendants' two affirmative defenses that might bear on Ramada's performance. Even if these issues were properly raised by Defendants (which they are not), these issues would not preclude summary judgment in Plaintiff's favor.

A.    Defendants' Affirmative Defenses

In their papers, Defendants exert no effort to address the issue of their affirmative defenses in any meaningful fashion. In their answer, Defendants assert three affirmative defenses: (1) that Ramada failed to provide, training, support, and reservation services to the Defendants; (2) that Ramada negligently cut-off Defendants' access to the reservation system in May and August 2000; and (3) that Ramada knew Defendants had Ramada signs and other hotel items bearing Ramada's name. (Defs.' Answer (D.E. 8) at 1.) Defendants' three-page summary judgment response does not attempt to tie any of these defenses to the case. As a consequence, the Court is left to guess why the Defendants believe that these alleged "affirmative defenses" are relevant to what is at issue and, more importantly, how—if at all—they affect the disposition of the issues presently before the Court.

This Court is not obligated to construct arguments regarding the Defendants' affirmative defenses on their behalf. *See, e.g., Edward E. Gillen Co.*, 3 F.3d at 196. "A summary judgment on the issue of liability encompasses all affirmative defenses and implicitly challenges the non-movant to establish a basis for finding that the defenses are both applicable and supported by

sufficient facts." *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F. Supp. 1164, 1167 (S.D. Ind. 1992); *accord, e.g., Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 714 (8th Cir. 2004); *Alexander v. Unlimited Progress Corp.*, No. 02-2063, 2004 WL 2384645, at *4 (N.D. Ill. Oct. 20, 2004); *see also Apollo Galileo USA P'ship v. Kingdom Vacations, Inc.*, No. 01-6847, 2002 WL 1359391, at *3 n.1 (N.D. Ill. June 20, 2002) (affirmative defenses that are not raised by the nonmovant in response to a summary judgment motion are waived). As a result, the Court considers these issues waived.

Despite the lack of any meaningful guidance or argument, the Court will, in an abundance of caution, address the first two affirmative defenses because they are at least hinted at in Defendants' summary judgment response. In this regard, Defendants note in their opposition brief that Sheth testified in paragraph number six of his affidavit "that Ramada without justification cut off the motel from the national reservation system in May and August 2000." (Defs.' Local Rule 56.1(b)(2) Mem. of Law (D.E. 51) at 2.) Defendants further state that, presumably in reference to paragraph number 12 of Sheth's affidavit, "Ramada never provided . . . any training in the operation of the motel." (*Id.*) Defendants also refer to certain of Shah's interrogatory responses. (*Id.* at 3.) Defendants contend that, among others, "these sworn averments contradict[] Plaintiff's statement of material facts and support[] Defendant's Counter Claims that Ramada negligently breached the Agreement by failing to provide training to the new staff and deprived Defendants of revenue by cutting off the motel's access to the national reservation system on several occasions." (*Id.*) The Court emphasizes—once again—that there is no counterclaim for breach of the Agreement for failing to provide training. It was never pled by the Defendants. Rather, Defendants pled it as a purported affirmative defense to Defendants'

22

liability.[16]

As best the Court can tell, Defendants are of the belief that regardless of Royal Vale's failure to meet its financial and quality assurance obligations, Ramada's alleged failure to provide training, support, and reservation services, as well as Ramada's alleged "cutting-off" of Defendants' access to the reservation system in May and August 2000, precludes the entry of summary judgment against them. Thus, it is the Defendants, in response to Ramada meeting its initial summary judgment burden, that have apparently referenced their first two affirmative defenses as being supported by genuine issues of material fact that purportedly foreclose judgment as a matter of law.

The Court has pored over Defendants' summary judgment materials, trying to understand, given the record before the court, how Defendants' first two affirmative defenses can even fairly be characterized as coherent at this juncture of the litigation. The Defendants have never identified the legal bases for these defenses. As noted above, the Court assumes that Defendants are invoking certain breach-related contract principles. But even assuming that this is the case, there are several fundamental issues that the Defendants have not even attempted to address in their summary judgment papers. For instance, what provisions of the Agreement allegedly have been breached by Ramada? The Defendants certainly never identified any in their response brief—and it is not this Court's responsibility to scour the record looking for contractual provisions that may or may not be applicable to such defenses. Moreover, even assuming that

---

[16]    Counterclaims and affirmative defenses are different in that a counterclaim seeks affirmative relief whereas an affirmative defense only attempts to defeat a plaintiff's cause of action. *See Olaque v. Vill. of Bensonville*, No. 96-6854, 1997 WL 337199, at *6 (N.D. Ill. June 13, 1997).

23

Ramada did "cut-off" Royal Vale from the reservation system and "never provided training," Defendants do not even attempt to articulate how, under applicable law, these facts preclude the entry of summary judgment. (Defendants surely must have principles of New Jersey contract law or contract law generally in mind that they at least believe may support such a position.) These omissions are fundamental deficiencies in the Defendants' presentation of their purported affirmative defenses in their effort to forestall summary judgment.

Moreover, even if the Court were to consider Defendants' proffered evidentiary materials—with a view to seeing whether they would properly support contract-related affirmative defenses, whatever they may be as applied to the facts of this case—Defendants' evidence is not sufficient to create a genuine issue of material fact.

A meaningful portion of Defendants' proffered evidence comes in the form of interrogatory responses signed by Defendant Shah. These interrogatory responses are not properly considered. Evidence presented to defeat a summary judgment motion need not be in admissible form, but it must be admissible in content. *See Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). As Ramada points out, the interrogatory responses, to the extent they are offered for the truth of the matters asserted, constitute inadmissible hearsay. In this regard, Defendant Shah, who verified the interrogatory answers, will be unavailable to testify at trial and was never deposed because Defendants did not make him available. (Apparently Mr. Shah suffered a debilitating illness or medical problem; Ramada explains that Defendants made clear that Shah could not and would not sit for a deposition or testify at trial, and Defendants do not challenge this position.) Since defendant Shah will not be testifying at trial and was not deposed, the written interrogatory responses, if offered at trial,

would be inadmissible hearsay in both form and content. *See* Fed. R. Evid. 801(c) (defining

hearsay). Accordingly, even if the interrogatory responses were material, the Court could not

consider them for purposes of summary judgment.[17] *See Eisenstadt v. Centel Corp.*, 113 F.3d

738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the

same extent that is inadmissible in a trial . . . .").[18]

Defendants also cite to the Sheth affidavit. The portions of Sheth's affidavit that

Defendants cite in their summary judgment response are not material (at least as the record has

been presented to the Court). Paragraph number six of Sheth's affidavit states that "Ramada cut

off the motel from Ramada's national reservation system without justification in May and again

in August 2000." (Sheth Aff. ¶ 6.) Paragraph number 12 states that "Ramada never provided

training in the operation of a Ramada motel to Mr. Shah or his staff at the motel." (*Id.* ¶ 12.)

---

[17]     Shah's statements, given the context in which they were made, do not fall into the hearsay
exceptions for unavailable declarants under Federal Rule of Evidence 804(b)(1)-(6).

[18]     Several of the interrogatory responses that Defendants cite in their response memorandum
are immaterial. Interrogatory response number one states, among other things, that "Sheth knows
about . . . the various problems regarding the cutoffs of the reservation system . . . ." (Defs.'
Resp. to Pl.'s Interrogatory No. 1.) It also states that "Pat Tobin knows about trying
unsuccessfully to get Ramada corporate to respond regarding training." (*Id.*) It further states that
several Ramada employees "know about cutoffs in the reservation system . . . [and] the lack of
training provided to Sheth and Shah . . . ." (*Id.*) Interrogatory response number five states that
"Shah talked with Mr. Gutt several times about cutoffs on the reservation system but got no
follow up from Gutt." (Defs.' Resp. to Pl.'s Interrogatory No. 5.) The fact that certain
individuals may "know" or may have "talked" about cutoff and training issues does not create a
genuine issue of fact such that summary judgment is not warranted—these statements have no
bearing on the substantive issues presently before the Court. (Presumably, if the knowledge or
conversations identified in these interrogatory responses was beneficial to Defendants,
Defendants would have, at a minimum, submitted affidavits or deposition transcripts
demonstrating as much.) Defendants' responses to Ramada's interrogatories one and five cannot
therefore forestall summary judgment.

These affidavit statements do not "set forth specific facts showing that there [are] . . . genuine issue[s] for trial." Fed. R. Civ. P. 56(e). Defendants have not demonstrated the materiality of these statements; indeed, Defendants have not put them in the context of the other facts of this case at all. As a consequence, precedent teaches that these statements cannot forestall summary judgment. *See, e.g., Vanliner Ins. Co. v. Sampat*, 320 F.3d 709, 712 (7th Cir. 2003) (holding that where a nonmoving party failed to demonstrate how an issue would affect certain contracts and had made "no argument for materiality," the issue "could not properly preclude the district court from reaching its determination of the contract law questions").

The Court declines to further sift through the factual record in an attempt to put together a reasoned legal argument properly supported by admissible record evidence in support of Defendants' "affirmative defenses." The Court therefore turns to the issue of damages.

X.    Damages

Ramada alleges that breaches of the Agreement by Royal Vale have "caused [it] to incur substantial damages," citing paragraphs 71 to 86 of its statement of facts. (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 7.) Defendants do not dispute this assertion in their summary judgment response. But Defendants respond to the specific paragraphs by contending that Defendants' claims for set-off affect Ramada's damages. (Defs.' Resp. ¶¶ 71, 72, 74.) These are not proper responses under Local Rule 56.1; these paragraphs are deemed admitted because Defendants provide no record evidence in support of their disagreements. *See Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004).[19]

---

[19]    A claim for set-off, even assuming such a claim were shown to be meritorious (which it has not been here, particularly in light of the Court's ruling regarding Defendants' counterclaim and Defendants' failure to advance any meaningful arguments), does not invalidate

26

A. Ramada Is Entitled to Damages for Unpaid Recurring Fees

It is undisputed that Royal Vale was obligated to pay recurring fees under the Agreement.

Under section 7.3 of the Agreement, Ramada is entitled to interest on past due amounts of

Recurring Fees at 1.5% per month.[20] (Pl.'s St. ¶ 72.) As of June 22, 2004, the amount of

reoccurring fees due from the Defendants to Ramada under the Agreement was $65,691.03,

including interest. (Id. ¶ 71.) Defendants have not paid any of the Recurring Fees. (Id. ¶ 73.)

The Court, therefore, holds that Ramada is entitled to a damage award equal to the amount of the

unpaid Recurring Fees plus interest as provided for in the Agreement.

B. Ramada Is Entitled to Liquidated Damages

It is also undisputed the Agreement provided that Ramada would be entitled to liquidated

damages in the event of premature termination. (Id. ¶ 31.) Defendants do not argue that the

liquidated damages clause of the agreement is not enforceable. In fact, Defendants agree that the

amount of liquidated damages "is a reasonable pre-estimate of the damages that will be incurred

[by Ramada as a consequence of the premature termination] and is not a penalty." (Defs.' Resp.

¶ 32; see also id. ¶ 76) The parties also agree that the liquidated damages provision represented a

good faith pre-estimate of the monetary losses Ramada would incur, and that calculating the

precise amount of actual damages would be difficult, if not impossible. (Pl.'s St. ¶¶ 76-78.) The

a claim for breach of contract. See Latino Food Marketers, LLC v. Ole Mexican Foods, Inc., No.
03-0190, 2004 WL 632872, at *1 (W.D. Wis. Mar. 30, 2004).

[20]    The Court reviewed section 7.3 of the Agreement, and it states that "[i]nterest is payable
when [Royal Vale] receive[s] our invoice on any past due amount payable to us under [the]
Agreement at a rate of 1.5% per month or the maximum rate permitted by applicable law,
whichever is less, accruing from the due date until the amount is paid." (D.E. 31, Ex. B at 9.)
The Defendants do not argue that the maximum rate of interest permitted by applicable law is
less than 1.5% per month.

New Jersey Supreme Court has recognized that "that liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." *Metlife Capital Fin. Corp. v. Washington Ave. Assocs., L.P.*, 732 A.2d 493, 496 (N.J. 1999). The Court, therefore, after finding that Royal Vale breached Agreement, which resulted in the premature termination of the contract, holds that Ramada is entitled to liquidated damages as provided in the Agreement.

The parties agree that the formula for calculating liquidated damages is found in section 12.1 of the Agreement, and this section "multiplies the Facility's number of rooms by $2,000." (Pl.'s St. ¶ 33.) The parties agree that the Facility contained 120 rooms. (*Id.* ¶ 16.) Therefore, based on the formula set forth in the Agreement, Ramada is entitled to $240,000 in liquidated damages, plus interest. Under section 7.3 of the Agreement, Ramada is entitled to interest calculated at the rate of 1.5% per month on this amount from September 20, 2001, until the present.[21]

XI.  Infringement and Unfair Competition Claims Under the Lanham Act

Ramada argues that it is also entitled to summary judgment on its claims that Royal Vale's misuse of the Ramada Marks following termination of the Agreement violates sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125, which violations entitle Ramada to statutory infringement damages. (Mem. in Supp. of Pl.'s Mot. for Summ. J.(D.E. 29) at 10.) In this regard, Ramada argues that "Royal Vale failed to de-identify the Facility from its former

---

[21]  Ramada in its opening summary judgment brief contends that it is entitled to liquidated damages in the amount of $358,000. (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 9.) It is unclear what date corresponds to this figure.

appearance as a Ramada guest lodging facility immediately following termination and continued to use the Ramada Marks despite demands to cease and desist." (*Id.* at 9.) Defendants, in response, contend that in Sheth's affidavit, Sheth testified that "he and Mr. Shah had trouble finding someone to cover-over the Ramada signs after September 2001 and that they had no willful intent to use any Ramada trademark without authority." (Defs.' Local Rule 56.1(b)(2) Mem. of Law (D.E. 51) at 2.) Defendants point out that Sheth also testified "that the minor matter of a few telephone plates with Ramada's name on them was inadvertent and that they were promptly removed when Ramada called it to [Sheth's] attention." (*Id.*) This evidence appears to relate to the issue of willfulness and not infringement *vel non.*

The undisputed facts related to Ramada's Lanham Act claims are as follows. It is undisputed that Ramada has the exclusive right to sublicense, among other marks, the name, design, and logo for "Ramada," which are listed on the principal register of the United States Patent and Trademark Office. (Pl.'s St. ¶ 9.) It is also undisputed that termination of the Agreement on September 20, 2001, required that Royal Vale "discontinue immediately any further use of the Ramada Marks, and to de-identify the Facility by removing all items bearing the Ramada Marks." (*Id.* ¶ 65.) Royal Vale continued to display certain Ramada Marks (specifically the Ramada name, logo, and design) on a sign, building front, and telephone "face plates" as of February 21, 2002. On April 5, 2002, the Court entered an Agreed Order for a Preliminary Injunction, requiring the Defendants to remove the Ramada signage by noon April 12, 2002, and immediately enjoining the Defendants from any further use of Ramada Marks at the Facility. (*Id.* ¶ 69.) As of August 29, 2002, the Facility was not completely de-identified in that the Facility displayed telephone face plates bearing the Ramada name within its rooms. (*Id.*

29

¶ 70.)

"Under the Lanham Act, a party may assert claims for, *inter alia*, trademark infringement, *see* 15 U.S.C. § 1114(1) (in this case, Count I), or unfair competition, *see* 15 U.S.C. § 1125(a) (in this case, Count II)." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir. 2004) (parentheticals in original). Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides, in relevant part, that

> Any person who shall without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a). Ramada argues that Royal Vale's use of the Ramada Marks after termination of the Agreement created a "strong risk of consumer confusion and deceiving consumers into believing that [the Defendants'] guest lodging facility was affiliated with [Ramada]" in violation of this section. (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 11.) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), provides, in relevant part, that

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, [or] symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Ramada argues that Royal Vale violated this section by "falsely designat[ing] the origin of Defendants' property and services as [that of Ramada]." (Mem. in

30

Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 12.)

To prevail on a infringement claim under section 32 and an unfair competition claim under section 43 of the Lanham Act, Ramada must establish that (1) the Ramada Marks are protectable, and (2) Royal Vale's use of the Ramada Marks is likely to cause confusion among consumers. *See CAE, Inc.*, 267 F.3d at 673-74; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 n.8 (7th Cir. 2001). There is no dispute regarding whether the marks displayed at the Facility after termination are protectable. (Pl.'s St. ¶¶ 9-11.) The court therefore turns to the "likelihood of confusion" element of Ramada's Lanham Act claims.

"Although likelihood of confusion is a question of fact, the issue may be resolved on summary judgment where the evidence is 'so one-sided that there can be no doubt about how the question should be answered.'" *Packman*, 267 F.3d at 643 (quoting *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996)). Seventh Circuit precedent teaches that the following seven factors are used to evaluate whether a likelihood of confusion exists in trademark and service mark cases: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendant to palm off his product as that of another." *Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997) (internal quotations omitted); *see also Sullivan v. CBS Corp.*, 385 F.3d 772, 776 (7th Cir. 2004).

Ramada contends that "Royal Vale's use of the same Ramada Marks it previously used as [a Ramada] franchisee at the same location created a likelihood of confusion within the meaning of the Lanham Act." (Mem. in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 10.) The Court

agrees. Numerous cases, including Seventh Circuit precedent, support Ramada's position. *See,*
*e.g., Gorenstein Enter., Inc. v. Quality Care-USA, Inc.,* 874 F.2d 431, 435 (7th Cir. 1989) (citing,
among others, *Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir. 1983)); *Bunn-O-*
*Matic Corp. v. Bunn Coffee Serv., Inc.,* 88 F. Supp. 2d 914, 922 (C.D. Ill 2000) ("[L]ikelihood of
confusion exists as a matter of law if a licensee continues to use marks owned by the licensor
after termination of the license.") (citing *Mason,* 710 F.2d at 1492-93); *see also Dunkin' Donuts*
*Inc. v. Donuts, Inc.,* No. 99-1141, 2000 WL 1808517, at *7 (N.D. Ill. Dec. 6, 2000); *Dunkin'*
*Donuts v. Town Family, Inc.,* No. 95-3666, 1996 WL 328018, at *4-5 (N.D. Ill. June 11, 1996)
(collecting cases). It is undisputed that Royal Vale continued to display Ramada Marks after the
termination of the Agreement. The Court holds that the undisputed evidence satisfies the
likelihood of confusion prong of Ramada's Lanham Act claims.

Under 15 U.S.C. § 1117(a), a party prevailing on a Lanham Act claim is entitled to
recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of
the action." 15 U.S.C. § 1117(a). Ramada seeks $40,837.83 in damages for Royal Vale's
infringement, which Ramada requests be trebled to $122,513.49, for alleged willfulness. (Mem.
in Supp. of Pl.'s Mot. for Summ. J. (D.E. 29) at 12.) Ramada also seeks "attorneys' fees
prejudgment interest and the costs of the suit." *(Id.)*

The Court begins by addressing the statutory or other bases for Ramada's claimed
damages and Ramada's request for attorneys' fees, prejudgment interest, and costs. It is clear, as
discussed below, that Ramada is not seeking Royal Vale's profits under 15 U.S.C. § 1117(a).
Rather, it appears that Ramada is seeking to recover a measure of actual damages under 15
U.S.C. § 1117(a)(2) and costs under § 1117(a)(3). (Defendants do not argue to the contrary or

32

address the issue of calculation of damages under the Lanham Act at all.) Section 1117(a) provides, in the appropriate circumstances, a statutory basis for an award of attorneys' fees. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). Section 1117 does not reference prejudgment interest; however, Seventh Circuit precedent teaches that "prejudgment interest should be presumptively available to victims of federal law violations." *Gorenstein*, 874 F.2d at 436.

Paragraph 69 of Darby's affidavit explains how Ramada reached the $40,837.83 figure. As discussed below, this figure appears to represent a claim for actual damages under 15 U.S.C. § 1117(a). The affidavit states that

> [Ramada] used the total amount of revenue reported for the 24 months prior to termination, starting with the last month in which the franchise reported, and determined the average monthly revenue of the Facility. [Ramada] then determined the amount of Recurring Fees that would have been due [Ramada] based on that average monthly revenue, using the 8.5% amount for Recurring Fees as set forth in Section 7 and Schedule C of the License agreement.

(Darby Aff. ¶ 69.) According to Darby, "[t]his calculation generated a damage amount of $3712.53 per month of infringement." Ramada "then multiplied that number by eleven, which is the number of months Defendants infringed the Ramada Marks (from the date of termination, September 20, 2001, until at least August 29, 2002), to arrive at its $40,837.83 calculation of infringement damages." (*Id.*)

Courts, including the Seventh Circuit, have indicated that using lost royalties as the proper measure of actual damages is appropriate under 15 U.S.C. § 1117(a). *See Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1350 (7th Cir. 1994) ("[T]he district court ought to begin with the one measure of actual damages that, if ascertained with reasonable certainty, could

be said to reflect the actual loss of [plaintiff]—the cost of a reasonable royalty."); *see also Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 790 (N.D.N.Y. 2003), *aff'd*, No. 03-9243, 2005 WL 181688, at *1 (2d Cir. Jan. 25, 2005). The Court, therefore, finds that the $40,837.83 figure is a reasonable estimate of actual damages.

This brings the Court to the issue of treble damages. Section 1117(a) provides that "[i]n assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). As noted above, Ramada seeks treble damages for Royal Vale's violations of the Lanham Act.

Treble damages under Section 1117(a) are denied. Ramada has not provided the Court with any argument, other than a passing suggestion that Royal Vale's infringement was "willful," as to why an award of treble damages is appropriate. The Court is not inclined to grant such an award on the present record. Although most of the Defendants' factual presentation is deficient, their proffered factual support, in apparent support of a denial of willfulness, is well-founded. (*See* Defs.' Local Rule 56.1(b)(2) Mem. of Law (D.E. 51) at 2 (discussing Sheth Affidavit ¶ 11).) The Court finds that there is a triable question, based on admissible evidence, concerning whether any additional damages would be warranted for willfulness, assuming such an award is appropriate under the law. Ramada has previously indicated its doubt as to whether the Defendants were judgment-proof, at least in part. If Ramada intends actually to pursue any enhanced damages for alleged willfulness, the parties should confer about what mechanism will

efficiently address this issue going forward.[22] (It appears that the parties have waived a jury trial on this issue in the Agreement and Guaranty. (*See* D.E. 31, Ex. B, Section 17.6; Compl., Ex. B (incorporating waiver of jury trial provisions of Agreement).)

XII.    Summary Judgment on Count III Is Denied

In its memorandum in support of its motion for summary judgment, Ramada does not advance any argument as to why it is entitled to summary judgment on Count III. This count asserts a claim under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). The Court, therefore, denies summary judgment on Count III.

XIII.   Summary Judgment Is Appropriate on Count IX

The terms of the Guaranty are undisputed. It is undisputed that both Sheth and Shah jointly and severally guaranteed the performance of Royal Vale's obligations under the Agreement. (Pl.'s St. ¶ 39.) In this regard, they agreed that they would "immediately make each payment and perform or cause [Royal Vale] to perform, each unpaid or unperformed obligation of [Royal Vale] under the . . . Agreement." (*Id.*) Sheth and Shah also agreed "that the prevailing party should recover its costs, including reasonable attorneys' fees, incurred to enforce the rights and remedies granted under the Guaranty or the . . . Agreement." (*Id.* ¶ 40,)

Under the Agreement, Royal Vale assumed an obligation to pay Recurring Fees. (*Id.* ¶ 25.) Royal Vale, as a consequence of its breach and Ramada's subsequent termination of the Agreement, also assumed an obligation to pay liquidated damages. (*Id.* ¶¶ 76-78.) Sheth and

---

[22]    The question of attorneys' fees and costs, while theoretically also open under the Lanham Act, appears to be moot in practical terms. The Guaranty (discussed below) provides for recovery of attorneys' fees and costs, and recovery of Plaintiff's fees and costs in this case appear to be subsumed under that provision.

Shah jointly and severably guaranteed the performance of these obligations under the Guaranty. The Court therefore holds that Sheth and Shah, pursuant to the terms of the Guaranty, are obligated to satisfy the judgment entered in this matter with respect to the amounts for Recurring Fees and liquidated damages. Sheth and Shah are also jointly and severably liable for Ramada's costs, including reasonable attorneys' fees, that Ramada has incurred in enforcing its rights and remedies in this suit.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Ramada on Defendants' counterclaim. Summary judgment is also granted in favor of Ramada on Counts I, II, V, VII, and IX of Ramada's Complaint. Ramada's motion to strike is granted in part and denied in part as moot. Summary judgment is denied on Count III. Summary judgment is denied on Count VI because that count is moot in light of the Court's granting summary judgment in favor of Ramada on Count V. Treble damages are denied with respect to Counts I and II.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: 2-16-05

36